IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAIME HERNANDEZ,<br><br>    Petitioner,<br><br>  v.<br><br>MIKE EVANS, Warden,<br><br>    Respondent. | No. C 05-4364 WHA (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

This is a federal habeas corpus action filed by a state prisoner pursuant to 28 U.S.C. 2254. As grounds for habeas relief petitioner alleges, *inter alia*, that the trial court violated his due process rights by giving constitutionally flawed jury instructions. For the reasons set forth below, the petition is **DENIED**.

## STATEMENT

In 2003, Petitioner was convicted by a Monterey County Superior Court jury of three counts of murder (Cal. Pen. Code § 187), and of enhancements for using a firearm in the commission of a felony and participation in a street gang (id. §§ 12022.53 & 186.22), enhancements which where attached to each count of murder. The trial court sentenced petitioner to a total term of 180 years to life in state prison. Petitioner appealed. The California Court of Appeal for the Sixth Appellate District affirmed the judgment (Ans., Ex. C (*People v. Hernandez*, No. H026408, 2004 WL 2958275

(Cal. Ct. App. Dec. 22, 2004)) at 1, 27).[1]  The California Supreme Court denied his petition for review (Pet. at 4).  It appears that petitioner did not file any state habeas petitions relating to the convictions at issue here.

Evidence presented at trial showed that during the afternoon of September 1, 2002, petitioner killed three persons who were members of a rival gang.  At the time of the killings, petitioner was sixteen years old and a member of the Norteno street gang.  Three days before the killings, on August 30, 2002, petitioner was shot by a person wearing blue, a color associated with the Surenos, a rival gang.  The three men who were killed on September 1 were Surenos (Ans., Ex. C at 2).

As grounds for federal habeas relief, petitioner alleges that (1) the trial court's admission of irrelevant evidence that there was ammunition near petitioner's house violated his due process rights; (2) admission of an expert's testimony as to the ultimate issue of petitioner's mental state violated due process; (3) his due process rights were violated by the trial court's failure to instruct sua sponte on accomplice testimony; (4) his due process and confrontation rights were violated when the trial court instructed with CALJIC 2.11.5, regarding unprosecuted accomplices; (5) his due process rights were violated by the trial court's giving CALJIC 2.21.2, regarding rejection of testimony when part of it is false; (6) his due process rights were violated by the cumulative effect of the above errors; (7) the trial court's conclusion that it lacked the power to order a remand to juvenile court absent prosecutorial consent violated due process and the separation of powers doctrine; and (8) his trial and appellate counsels rendered ineffective assistance.

**STANDARD OF REVIEW**

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[1] Judges Mihara, Rushing, and Premo sat on the state appellate panel.  The panel modified the judgment to reflect that petitioner had 343 days of actual credit and 343 days of total credit.

2

28 U.S.C. 2254(d).

The first prong applies both to questions of law and to mixed questions of law and fact. *Williams v. Taylor*, 529 U.S. 362, 407–09 (2001). The second prong applies to decisions based on factual determinations. *Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of Section 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412–13. A state court decision is an "unreasonable application of" Supreme Court authority, and thus falls under the second clause of Section 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. A federal court on habeas review may not issue a writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id*. at 409.

Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340. This presumption is not altered by the fact that the finding was made by a state court of appeal, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546–47 (1981). A petitioner must present clear and convincing evidence to overcome Section 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Ibid*.

Under Section 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340.

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion, in this case that of the California Court of Appeal. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801–06 (1991).

3

**DISCUSSION**

**1.    ADMISSION OF AMMUNITION EVIDENCE**

Petitioner claims that the trial court violated his rights when it admitted evidence that ammunition was found near his residence (Pet. at 10). The state appellate court rejected this claim, finding that the ammunition evidence was relevant and sufficiently probative (Ans., Ex. C at 13–14).

During a search of petitioner's residence, police officers found a "corroded [unexpended] nine-millimeter ball bullet inside some plastic baggies . . . three to five feet from the backdoor of [petitioner's] apartment." This bullet "was the same common brand as one of the casings found at the [crime] scene" (*id*. at 9). At trial, defense counsel objected to the admission of the corroded bullet on the grounds that this evidence was irrelevant and that its prejudicial effect outweighed its probative evidentiary value. In response, the prosecutor made an offer of proof that the officer who found the bullet could testify to the circumstances of the bullet's discovery, and that an expert could testify that that the bullet casing that matched the unexpended, corroded bullet had been fired from the gun used to kill the victims. The trial court denied the defense's motion, finding that the ammunition evidence was relevant, but that it's evidentiary weight was for the jury to determine (*id*. at 12–13).

The admission of evidence, such as the ammunition, is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process. *See Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999). Petitioner has not shown that a specific federal constitutional guarantee was violated, but rather bases his contention on a state rule of evidence. As to the question of the magnitude of the error, only if there are no permissible inferences that the jury may draw from the evidence can its admission violate due process such that petitioner was denied a fundamentally fair trial. *See Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991). The jury could make a permissible inference from the ammunition evidence.[2] Specifically, the presence

---

[2] Petitioner also claims that the ammunition evidence constituted prior bad act or impermissible character evidence (Pet. at 9.) Petitioner's claim is without merit. Even if the ammunition evidence constituted character evidence, the Supreme Court has left open the question of whether admission of

4

1 near petitioner's residence of ammunition similar to the type used in the killings could indicate
2 that petitioner was involved in the shootings.  Because such an inference is permissible, petitioner
3 has not shown that the admission of the evidence resulted in a fundamentally unfair trial.  Based
4 on this reasoning, petitioner's claim is denied.

**2.  ADMISSION OF EXPERT TESTIMONY**

Petitioner claims that the trial court violated his due process rights by allowing an expert to testify that the killings "were committed with the specific intent to further a gang."  Petitioner contends that this testimonial evidence impermissibly offered an opinion as to the "ultimate question of a particular person's intent."  Petitioner contends that this "authoritative-sounding" testimony "had a strong tendency to remove the intent questions from the jury" and lessened the state's burden of proof (Pet. at 13.)  The state appellate court found that even if the trial court erred in admitting the testimony, such error was harmless "given the extensive admissible expert testimony that these *types* of gang-related retaliatory murders would have been committed to benefit the gang" (Ans., Ex. C at 15–16).

Petitioner's claim is foreclosed by case law.  The Supreme Court has left open the question whether the Constitution is violated by the admission of expert testimony concerning an ultimate issue to be resolved by the trier of fact.  *See Moses v. Payne*, 543 F.3d 1090, 1105 (9th Cir. 2008).  Furthermore, the Ninth Circuit has declared that it is well-established that expert testimony on an ultimate issue is not per se improper.  *Id.* at 1106.  Because petitioner's claim is based on the opposite proposition, it necessarily fails.  Petitioner's claim is denied.

**3.  INSTRUCTION ON ACCOMPLICE TESTIMONY**

Petitioner claims that the trial court violated his right to due process by failing to instruct, sua sponte, that accomplice testimony should be viewed with caution, as set forth in CALJIC Nos. 3.10–3.19 (Pet. at 16).  The state appellate court found that under state law that any alleged error committed by the trial court was harmless (Ans., Ex. C at 16–17).

---

propensity evidence violates due process.  *Estelle v. McGuire*, 502 U.S. 62, 75 n.5 (1991).  Based on the Supreme Court's reservation of this issue as an "open question," the Ninth Circuit has held that a petitioner's due process right concerning the admission of propensity evidence is not clearly established as required by AEDPA.  *Alberni v. McDaniel*, 458 F.3d 860, 866–67 (9th Cir. 2006).

1  The facts underlying petitioner's claim are as follows:

2  Norteno gang member Mateo Guerrero assisted police in retrieving the
nine-millimeter gun used in the shooting . . . At trial, Mateo was in the Youth
3  Authority pursuant to his admission that he was an accessory after the fact to the
homicides. He testified he did not supply a gun to [petitioner], and he denied
4  having heard any admissions from [petitioner]. Mateo previously had told police
[petitioner] asked to use his gun after [petitioner] was shot [on August 30], that
5  [petitioner] brought back the gun after the shooting [on September 1], that
[petitioner] said he "had done something bad" and "needed to get rid of the gun,"
6  and that [petitioner] admitted he "had done the shooting." Mateo gave conflicting
statements regarding whether the gun had been loaded when he provided it to
7  someone for [petitioner]; he alternatively said it was unloaded, it had four or five
rounds in it, and it was fully loaded with eight rounds.

8

9  (Ans., Ex. C at 9).

10  CALJIC Nos. 3.10–3.19 give the legal meaning of "accomplice," (*id*. 3.10, 3.14–3.17),

11  state that an accomplice's testimony must be corroborated by sufficient evidence (*id*. 3.11–3.13,

12  3.19), and that an accomplice's testimony must be "viewed with care and caution" (*id*. 3.18).

13  A trial court's failure to give special instructions on accomplice testimony, which is

14  "'inevitably suspect' and unreliable," can be prejudicial error when that testimony is "important"

15  to the case. *United States v. Bernard*, 625 F.2d 854, 857 (9th Cir. 1980) (citing *United States v.*

16  *Davis*, 439 F.2d 1105 (9th Cir. 1971). In *Davis*, the Ninth Circuit found prejudicial error because

17  "the defendant's guilt rested almost entirely on the testimony of the accomplice, and the other

18  evidence linking the defendant to the criminal activity was weak." *Bernard*, 625 F.2d at 857.

19  Under these legal principles, petitioner's claim is without merit. Specifically, petitioner's

20  case is unlike that in *Davis* because his guilt did not rest "almost entirely" on Mateo's testimony,

21  but rather on other significant evidence. One piece of such evidence was the proximity of the

22  ammunition to petitioner's residence. Another is the testimony of Suzy Rios, a sort of foster

23  mother to petitioner since he was twelve (Ans., Reporter's Transcript, Vol. 7 at 1680–81). Rios

24  testified at trial that petitioner said after he had been shot [on August 30] that he was going to get a

25  gun and "put in some work," a phrase that Rios defined as to "shoot somebody," or, more

26  generally, "to retaliate" (*id*. at 1688–89). According to her testimony, when Rios asked petitioner

27  whether he was involved in the September 1st shootings, he "just put his head down" (*id*. at 1696).

28  Rios testified that on another occasion, she told petitioner that he had killed three people, to which

6

petitioner responded that he "couldn't believe it" (*id*. at 1711). According to her testimony, Rios later told her husband and the police that petitioner had admitted that he was responsible for the shootings (*id*. at 1736–1737). Further evidence of petitioner's guilt came from Rios's daughter, Letitia, who testified at trial that petitioner had admitted to her that he was responsible for the shootings, and added, "I fucked up" (*id*., Vol. 8 at 1805). Also, one of the victims made a dying declaration that petitioner was responsible for the shootings (*id*., Ex. C at 10). Finally, the parties stipulated that Laura Cabrera, who had been incarcerated with petitioner in juvenile hall after the killings, told a defense investigator that petitioner had spoken to her about the homicides. According to the stipulation, petitioner told Cabrera that he was sorry for what happened, and had asked Cabrera to give a letter to one of the victim's girlfriends, Brenda Madrid. Cabrera stated that petitioner was asking Madrid to forgive him for what happened (*id*., Reporter's Transcript, Vol. 9 at 2059). Based on this record, strong evidence was presented at trial apart from Mateo's testimony to support the guilty verdict. The trial court's failure to give the instruction cannot, therefore, have resulted in prejudice to petitioner. Accordingly, petitioner's claim is denied.

**4.     USE OF CALJIC NO. 2.11.5**

Petitioner claims that his due process and confrontation rights were violated when the trial court instructed the jury with CALJIC No. 2.11.5, regarding unprosecuted accomplices. Petitioner contends that the instruction was prejudicial because it restricted the jury from considering that Mateo was facing potential prosecution if he did not testify against petitioner (Pet. at 18). The state appellate court found that though the prosecution conceded that petitioner's claim that the trial court had erred, there was "no reasonable likelihood the jury believed that, in assessing Mateo's credibility, it could not consider whether Mateo had pleaded guilty to accessory after the fact to avoid facing more serious [charges]" related to the case (Ans., Ex. C at 18, 20). CALJIC No. 2.11.5, as read to petitioner's jury, is as follows:

> There has been evidence in this case indicating that a person other than a defendant was or may have been involved in the crime for which that defendant is on trial. There may be many reasons why that person is not here on trial. Therefore, do not discuss or give any consideration as to why the other person is not being prosecuted in this trial or whether he has been or will be prosecuted. Your sole duty is to decide whether the People have proved the guilt of the defendant on trial.

7

(Ans., Clerk's Transcript, Vol. 3 at 603). In addition to giving the disputed instruction, the trial court also instructed the jury to consider a witness's "bias, interest, or other motive" (CALJIC 2.20) for testifying (Ans., Clerk's Transcript, Vol. 3 at 605).

At trial, Mateo's motivations for testifying and his culpability were made plain. In his testimony, Mateo admitted that he had been convicted of being an accessory, rather than of murder (*id.*, Reporter's Transcript, Vol. 8 at 1891). Police detective Sheldon Bryan, who took the stand immediately after Mateo, testified that he told Mateo that if Mateo would tell the police what he knew about the September 1st shooting, "we would evaluate [his statement], and then the district attorney's office would decide if anything at all would be done regarding his cases" (*id.* at 1919).

A habeas petitioner is not entitled to relief unless the instructional error "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). In other words, state prisoners seeking federal habeas relief may obtain plenary review of constitutional claims of trial error, but are not entitled to habeas relief unless the error resulted in "actual prejudice." *Id.* (citation omitted).

Under these legal principles, petitioner's claim is without merit. Simply put, the jury had no need to speculate on untried persons — the jury had been informed that Mateo already had been convicted of a crime related to this case. While the instruction may have confused the jury, its effect, based on the record, was not prejudicial, especially considering that, one, that the trial court instructed the jury that it could consider a witness's bias or interest in testifying, and, two, the strength of the evidence, apart from Mateo's testimony, supporting petitioner's guilt. Accordingly, petitioner's claim is denied.

Petitioner's claim that the trial court denied his right of confrontation is without merit, as the attempts at impeaching Mateo's credibility, as noted above, attest. Petitioner's claim is denied.

**5.    USE OF CALJIC NO. 2.21.2**

Petitioner claims the trial court violated his right to due process by giving the jury CALJIC 2.21.2, regarding rejecting testimony when part of the testimony is false. Petitioner contends that this instruction's "probability reference" permits jurors "to resolve dispositive credibility questions

8

as to impeached prosecution witnesses by a preponderance standard" (Pet. at 22). The state appellate court found no merit in petitioner's claim because such claims regarding CALJIC 2.21.2 have been rejected by the California Supreme Court (Ans., Ex. C at 20).

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). CALJIC 2.21.2, as read to petitioner's jury, is:

> A witness, who is willfully false in one material part of his or her testimony, is to be distrusted in others. You may reject the whole testimony of a witness who willfully has testified falsely as to a material point, unless, from all the evidence, you believe the probability of truth favors his or her testimony in other particulars.

(Ans., Clerk's Transcript, Vol. 3 at 607).

Under these legal principles, petitioner's claim is without merit. Specifically, there is no evidence that the disputed instruction confused the two distinct processes of determining the guilt of a criminal defendant based on the evidence and the assessment of the credibility of a witness who may provide evidence. Due process requires only that the jury find petitioner guilty of every fact necessary to constitute the crime based on proof beyond a reasonable doubt. CALJIC 2.21.2 relates to the assessment of a witness's credibility, which is not based on a reasonable-doubt standard, nor is it constitutionally required to be. Taking the two processes together, the jury uses CALJIC 2.21.2 to determine witness credibility. If the jury finds the witness credible, it then must determine whether that witness's testimonial evidence, along with all the other evidence presented at trial, prove a criminal defendant's guilt beyond a reasonable doubt. Without evidence to the contrary, the Court must assume that the jury followed its instructions and kept the two processes distinct. *See Richardson v. Marsh*, 481 U.S. 200, 206 (1987). Accordingly, petitioner's claim is denied.

**6.     CUMULATIVE ERROR**

Petitioner claims that his due process rights were violated by the cumulative effect of the above constitutional errors (Pet. at 24).

In some cases, although no single trial error is sufficiently prejudicial to warrant reversal,

9

1  the cumulative effect of several errors may still prejudice a defendant so much that his conviction
2  must be overturned. *See Alcala v. Woodford*, 334 F.3d 862, 893–95 (9th Cir. 2003). However,
3  where there is no single constitutional error existing, nothing can accumulate to the level of a
4  constitutional violation. *See Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002).

5  Petitioner's claim is without merit. Because there exists no single constitutional error,
6  there are no errors to accumulate to the level of a constitutional violation.

7  **7.   REMAND TO JUVENILE COURT**

8  Petitioner claims that the trial court's conclusion that it lacked the power to order a remand
9  to juvenile court absent prosecutorial consent violated due process and the separation of powers
10 doctrine (Pet. at 26).

11 Petitioner's claim fails. Petitioner has not cited any persuasive federal authority that the
12 trial court's conclusion, which was based on its determination of state law, violates his federal
13 constitutional rights. A reviewing federal court sits only to address violations of federal, and not
14 state, law. *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456
15 U.S. 107, 119 (1982); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Because petitioner has not
16 presented a cognizable federal habeas claim, his claim is denied.

17 **8.   EFFECTIVENESS OF TRIAL AND APPELLATE COUNSELS**

18 Petitioner appears to allege that his trial and appellate counsel were ineffective for failing
19 to raise a Fifth Amendment claim at trial and on appeal (Pet. at 5). This claim appears as a
20 parenthetical statement on the petition form, while petitioner's seven other claims are clearly
21 announced, presented, and distinguished. Despite appearing as an aside, the Court will address
22 this parenthetical statement as a claim. Though petitioner's claim appears to be unexhausted, the
23 Court will deny it on the merits. See 28 U.S.C. § 2254(b)(2)

24 Petitioner alleges that his trial and appellate counsels rendered ineffective assistance when
25 they failed to raise a claim that his Fifth Amendment rights, as they are articulated in *Miranda v.*
26 *Arizona*, 384 U.S. 436 (1966), were violated.

27 Claims of ineffective assistance of counsel are examined under *Strickland v.Washington*,
28 466 U.S. 668 (1984). In order to prevail on a claim of ineffectiveness of counsel, petitioner must

establish two things.  First, he must establish that counsel's performance was deficient, *i.e.*, that it fell below an "objective standard of reasonableness" under prevailing professional norms.  *Id*. at 687–68.  Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Ibid*.  Where the defendant is challenging his conviction, the appropriate question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id*. at 695.  It is unnecessary for a federal court considering a habeas ineffective assistance claim to address the prejudice prong of the Strickland test if the petitioner cannot even establish incompetence under the first prong.  *See Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998).  Claims of ineffective assistance of appellate counsel are reviewed according to the *Strickland* standard.  *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989).

      Petitioner's claim regarding his trial counsel is without merit.  Trial counsel did raise the matter before the trial court, as trial counsel's motion in limine, a copy of which petitioner includes in his petition, makes clear.  Because petitioner's claim rests on his allegation that trial counsel failed to raise the issue, his claim fails.  His claim regarding his appellate counsel is also without merit.  Under *Miranda*, a person subjected to custodial interrogation must be advised that he has the right to remain silent, that statements made can be used against him, and that he has the right to counsel.  These warnings must precede any custodial interrogation, which occurs whenever law enforcement officers question a person after taking that person into custody or otherwise significantly deprive a person of freedom of action.  *Miranda*, 384 U.S. at 444.  Based on the transcript of his police interrogation, which is appended to the copy of the motion in limine, the police informed petitioner of his *Miranda* rights, and, in fact, answered his specific questions about those rights.  Because there is no evidence of an underlying constitutional violation, petitioner has failed to show that appellate counsel's failure to raise the issue on appeal constituted a deficient performance.  Accordingly, petitioner's claims of ineffective assistance of trial and appellate counsel are denied.

11

As to all petitioner's claims, the Court concludes that the state court's determinations were not contrary to, or unreasonable applications of, clearly established Supreme Court precedent, nor were they based on an unreasonable determination of the facts in light of the evidence presented under 28 U.S.C. 2254 (d)(1), (2). Accordingly, petitioner's claims are denied.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**. The clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: January 14, 2009

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\HC.05\HERNANDEZ364.DSM.md